MARY WARD v. YAZOO & MISSISSIPPI VALLEY RAILROAD
COMPANY.

1. EVIDENCE. *Declarations. Res gestœ.*

    The declarations of the actors, made in the progress of a transaction, constitute a part of the *res gestœ*, and are admissible in evidence.

2. SAME. *Supreme court practice.*

    The exclusion of such evidence, when not clearly cumulative, will constitute reversible error.

FROM the circuit court of Claiborne county.

HON. PATRICK HENRY, Judge.

Mary Ward, appellant, was plaintiff in the court below; the railroad company, appellee, was defendant there. From a judgment for $250 in plaintiff's favor she appealed to the supreme court, contending that her recovery was greatly reduced because of errors, to her prejudice, committed by the court below. The facts were these: Appellant, with two other girls, all colored, reached Elizabeth station, a junction of the Southern Railway with defendant railroad, about 10 o'clock, on the night of March 9, 1899, and entered the colored waiting-room of defendant's depot, to await and take passage on the Yazoo & Mississippi Valley train to Cary, Miss. One Humphries, a white man, was also a passenger, and awaiting the arrival of the same train. Humphries, finding a poor fire in the white waiting-room, went into the colored waiting-room, where appellant and her companions were. Appellant and her companions asked the negro porter if their trunks could be checked, and the porter referred them to the station agent, who, he said, would come in a short time. When the agent arrived, he went into the ticket office and opened the ticket window of the colored waiting-room and called out, "Tickets," and appellant

asked him to sell her a ticket to Cary. The agent replied, "I will not sell you a damn thing." In the office with the agent was one Kirkland, an employee of the defendant company. The agent then asked appellant her name, and she replied, "Mary Ward." He then said, "Mary, you and one of those girls come in here, and we will talk the matter over." Appellant refused to go into the office, and the agent repeated the request several times. Humphries then asked to be allowed to go into the office, to the fire, when the agent drew his pistol and said to Humphries, "What are you spying around here for?" and told him to get out. Humphries ran out, and the girls became frightened and ran out into the dark, falling over each other and into the water and mud. The agent and his companion followed them out to the platform of the depot. At the trial of the case in the court below Humphries was introduced as a witness by plaintiff, and she undertook to prove by him that McDowell, the agent, followed appellant and Humphries to the platform, rushed by appellant, and told her that if she went back into the waiting-room after her pocketbook he would kill her, and cursed her as he did so. This evidence was excluded by the court. Several of the witnesses testified that the agent, McDowell, was drunk.

*McLaurin & Anderson* and *J. McC. Martin*, for appellant.

"The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and, in its turn, becomes the prolific parent of others; and each, during its existence, has its inseparable attributes, and its kindred facts, materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances, constituting part of the *res gestœ*, may always be shown to the jury, along with the principal fact. . . . The principal points of attention are, whether the circumstances and declarations offered in proof

were cotemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character.

"Declarations, to become part of the *res gestæ*, must have been made at the time of the act done, which they are supposed to characterize, and have been well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction.

"So, upon an inquiry as to the state of mind, sentiments, or disposition of a person at any particular period, his declarations and conversation are admissible. They are part of the *res gestæ.*" Greenleaf on Evidence, sec. 108 and notes.

"It is to be observed that, where declarations offered in evidence are merely narrative of a past event or occurrence, they cannot be received as proof of the existence of such occurrence. They must be concomitant with the principal act, and so connected with it as to be regarded as the mere result and consequence of the coexisting motives, in order to form a proper criterion for directing the judgment which is to be formed upon the whole conduct." *Ib.*, sec. 110.

The rules laid down in Greenleaf are only amplified and explained in the cases found in the various reports. In the case of *Chicago, etc., Ry. Co.* v. *Becker*, 128 Ill., 545 (15 Am. St. Rep., 146), the court states the rule as follows: "The true inquiry, according to all the authorities, is, whether the declaration is a verbal act, illustrating, explaining or interpreting other parts of the transaction of which it is itself a part, or is merely a history, or a part of a history, of a completed past affair. In the one case it is competent; in the other it is not." Again, in the case of *State* v. *Arnold*, 47 S. C., 9 (58 Am. St. Rep., 869), the court announces the following, to wit: "To make declarations a part of the *res gestæ* they must be contemporaneous with the main fact, not, however, precisely concurrent in point of time. If they spring out of the transaction,

elucidate it, and are made at a time so near to it as reasonably to preclude the idea of deliberate design, they are then to be regarded as cotemporaneous.''

''*Res gestæ* are the circumstances, facts and declarations which, grown out of the main fact, are cotemporaneous with it, and serve to illustrate its character.'' *Pinney* v. *Jones*, 42 Am. St. Rep., 209; *Hermes* v. *Chicago, etc., Ry. Co.*, 27 Am. St. Rep., 69.

In the case of *Wilson* v. *Southern Pac. R. R. Co.*, 57 Am. St. Rep., 769, the court, after reciting the facts, sums up as follows: ''The *res gestæ* included the fact that the train stood across the street, and the movement of the cars, and the different attempts of Fielding to cross, and what was said or done by him or the plaintiff, the switchman or the engineer, during such movements; the jumping from the wagon when it was struck; the fact that the train then moved back; that Fielding drove on, and that plaintiff walked across the track to the switchman, and what they then said, were all so connected as to constitute a part of the transaction, and, therefore, a part of the *res gestæ.* All of these acts and declarations were the immediate expression of the fears, the intentions, and the conflicting purposes brought into play by the occurrences of the occasion, the situations of the respective parties, and their dangers and emergencies, real or apparent.'' See, also, *Trenton Pass. Co.* v. *Cooper*, 64 Am. St. Rep., 594. In the case of *The State* v. *Mayes*, 54 Miss., 417, the court say: ''The true ground for the admission of statements, as a part of the *res gestæ*, is that the statement is a verbal act, illustrating, explaining or interpreting such thing.'' In the case of *Railroad Co.* v. *Jones*, 73 Miss., 229, the court say: ''In actions against railroad companies for loss of crops, etc., by fire, resulting from alleged negligence of defendant's servants, while engaged in burning off grass along the right of way contiguous to plaintiff's land, it is not error to admit testimony as to declarations made by defendant's section foreman, who directed the work, that the

fire originated from one started by himself for the purpose mentioned, although the declarations were made on the morning of the second day after he did the work, if the injury was still incomplete and he was at the scene of it endeavoring to extinguish the fire and prevent further damage.''

The wrong complained of by appellant was still in progress when she, Humphries and McDowell all reached the platform. McDowell was still pursuing his purpose. He had run appellant and her co-passengers out of the waiting-room, where she had a right to be. When she ran out, he followed her and Humphries to the platform, without the slightest intermission, still intent on doing further wrong. When he saw appellant at the door of the waiting-room, out on the platform, he cursed her and forbade her returning to the waiting-room to get her pocketbook, threatening to kill her. Pursuing Humphries, at about ten or fifteen feet from the door of the waiting-room, where he had passed appellant, he thrust his pistol in Humphries' face, cursed him and ordered him off down the railroad.

Does not all this explain the condition of mind, the feelings and motives of McDowell, the agent, who was there in the discharge of his duties, and does it not illustrate the whole occurrence? He had determined on driving peaceful passengers from the waiting-room and the depot buildings. He had ordered Humphries to get out, and when he reaches him, attended by his companion, Kirkland, he immediately renews his order to get down on the railroad. In this, Kirkland indulges in the expression, ''Do what Mr. Mc. says do.'' In passing appellant, Kirkland remarked to appellant, '' Do what Mr. Mc. says do.'' Every single occurrence, outside and inside the waiting-room, is intimately associated, connected, related and bound together into one. The mind cannot separate any part of same. Nothing occurring on the platform is a narrative of a past and completed matter. It is part of it. It is the thing itself at white heat. Why, then, the court should have excluded what occurred on the platform cannot be answered on

any legal basis. It was undoubted error to rule it out of the case.

*J. M. Dickinson* and *Mayes & Harris*, for appellee.

The first assignment of error is that the court below erred in refusing to admit on the trial of the case testimony of Humphries, witness for the appellant, as to what occurred between him and the station agent on the platform. The court will see from an examination of the record that the appellant did testify to all that occurred in her presence on the platform, and Humphries testified as to what occurred in the waiting-room in the presence of the plaintiff. After Humphries got on the platform the agent followed him there and again threatened him, cursed him, and ordered him to leave the place, which he did. It is shown, however, by the testimony of Humphries that the appellant was not present when this occurred, and it was for that reason that the evidence was excluded.

The contention of the appellant is that this testimony was admissible as part of the *res gestæ* to show the frame of mind of the agent. The answer to this is that the exclusion of this testimony in this view was a harmless error, if it was error at all, because it was merely cumulative. Testimony as to the conduct of the agent and of his frame of mind is abundantly shown by the plaintiff and by Humphries and by Mary Martin, who was introduced as a witness for the plaintiff in this case.

The admission of what occurred between the station agent and Humphries not in the presence of the appellant on the platform could in no way strengthen the case for the plaintiff on this line. But the agent on the platform had applied some opprobrious epithets to Humphries not in the hearing of the plaintiff, and it would have been improper to have admitted this evidence to the jury in the light of the fact that the testimony of the witness for the plaintiff abundantly establishes the frame of mind and conduct of the agent, if the jury saw fit to believe it. The plaintiff herself testified abundantly as

to what the agent said and did on the platform. She testified that the agent had threatened to shoot her, put the pistol in her face, threatened to kill her if she went back into the waiting-room; testified that the agent accosted Humphries on the platform and put the pistol in his face, and it was proper to exclude from the jury the testimony of Humphries as to what took place between him and the agent, it being shown by him that the plaintiff was not present and did not hear or see what occurred. She had left the scene. We submit that this assignment is not well taken.

It has long been settled that the exclusion of competent evidence which merely tends to prove what was fully established by other proof in the case, is not a ground for reversal. *Drake* v. *Surget*, 36 Miss., 458; *Atwood* v. *Meredith*, 37 Miss., 636. It is, to say the least, doubtful whether this evidence would be properly admissible as part of the *res gestœ*, but, admitting that it was, the fact which it tended to prove was abundantly established by all the other testimony in the case.

WHITFIELD, C. J., delivered the opinion of the court.

It was error to exclude the testimony of Humphries as to what took place on the depot platform immediately after appellant and Humphries left the waiting-room. He told Mary Ward, as he rushed by her, that he would kill her if she went back into the waiting-room after her pocketbook. This was all, plainly, of the *res gestœ*. We cannot say that it was merely cumulative, and hence did no harm. In view of the course of the trial and the small amount of the verdict, we cannot say this error was not reversible.

*Reversed and remanded.*